I are pleased to be hearing your cases. We will proceed in the first case. Thank you and good morning. I'm Laser Goldsmith for the appellant Iris Foster. In this case, on the issue of causation, as to retaliation, because there's a retaliation and a sexual harassment claim, on the the retaliation claim, the decision maker, decision makers, essentially, were the chief of police, Chief Wright, and Ms. Billie, who was a lawyer and HR representative. Ms. Billie referred in her testimony to repeated complaints of retaliation as motivating her to concur in the firing of Officer Foster. She said that Foster's repeated protests of retaliation led her to think that Foster was fixated, preoccupied, unwilling to let go, and would always be complaining about retaliation. Such direct statements of retaliatory intent should have been sufficient to warrant trial in the case, even had there not been more. Unfortunately, Magistrate Judge Sullivan didn't refer to those statements in his opinion. But there's so much more even beyond merely just that. The Officer Foster's complaints of September 21st and September 28th, again, not referred to in the Magistrate Judge's opinion, led directly to her firing by Chief Wright, who admits that the timing of his decision was in early October, just after those two complaints were made. He admits that he can't think of anything that happened near the end of the employment to warrant the termination. The reasons that he cites to were things that had happened several months before, which in fact the record shows he found to be acceptable or even pleasing at the time. He only changed his mind after the complaints. There's a pretty serious record of absenteeism, though, wasn't there? How does that factor into the analysis? Yes, I think that, Judge Keenan, that that's overstated a bit. The record is that Officer Foster missed... I'm looking at this leave sheet in the appendix. Perhaps you could address that. Yes. In appendix page 1015. Or you don't need to. This is what I'm talking about. In essence, you can refer to the specific page if need be. In essence, what Chief Wright says is that the medical leave that Officer Foster needed and the injuries that she suffered on the job did not factor into his decision. What did was some other absences, of which there were three sick days. It was either July or August. Remember that Officer Foster hadn't been working there that long. That's in the record. She didn't have a lot of days of annual or sick leave available to her. And again... You know, Mr. Goldsmith, the facts of this case are interesting and I think we could go back and forward as to what occurred and did not. But I think you need to posture this case in light of what the law is. We are dealing with an initial determination pre-NASA in which it was a motivating factor is the basis for the retaliation. And the Supreme Court changed that to a but-for causation. And so I think that even in talking about the evidence here, sufficient for a motivating factor determined initially and probably correct. But the issue here is whether this was sufficient for a but-for causation. And it seems to be, quite frankly, the most intriguing issue in this case is whether that standard is different at the summary judgment stage as opposed to the jury stage. So I think from a legal perspective, the issue in this case is more legal than it is trying to nuance and determine what the facts are, but only to the there's been... I think you need to address it more than briefly. I think that's the issue. That's my opinion. But it could be thought otherwise. Very well, Judge Wynn. I've grappled with this quite a bit. And I think that first of all, there's at least one opinion of this court which we cited, which is the Harris versus Powhatan case, which deals with the but-for standard and summary judgment. It's an age case, but that's where the Supreme Court and NASA came up with the derived but-for standard by analogy. And clearly, the standard, the ultimate standard is but-for. There's no question about that. But bringing that to bear on the summary judgment context is a little dicier because the summary judgment context in the typical inferential discrimination case in which the Supreme Court made the initial determination in other cases. I'm sorry, Judge Wynn. Did you ask how it differs? How does it differ in terms of summary judgment as opposed to at the trial? I don't think that it differs in the context where the question is pretext, where the question is causation or pretext, where the question is whether the employer's stated reasons are truthful and motivated it or not. We're not yet reaching in this summary judgment context. Don't confuse me because you've given us the McDonnell-Douglas standard, which will come into play if you don't have the direct evidence. And I guess you can see you don't have direct evidence of this. But I want to, does that really have application here, McDonnell-Douglas factors in light of the causation here that the Supreme Court has articulated in essence? It does, but the application, Judge Wynn, it doesn't really change matters because the question is, is there sufficient evidence? The court has to look at the entirety of the record, obviously, which is, and the question is whether there's sufficient evidence from which a reasonable jury could find that retaliation was the motivation. And so to try to distinguish based on a but-for, you could see, for instance- A reasonable jury could find that but-for the retaliation, that would have not been motivation, I would think. Motivating factors. Yes, that but-for the retaliatory animus, the action wouldn't have happened. And the evidence for that, the way that that was presented wouldn't differ for a summary judgment context, particularly from what it would be under the motivating factor test. We all agree that a trial would be completely different because the jury instruction to the jury would be different and they would have to decide what they found based on that evidence, applying that standard. But it's very difficult to try to do that in the summary- I'm not following that. The evidence would be no different, the quantum of evidence would be no different for motivating factor than it is for but-for causation, is that what you're saying? I think that in terms of the, and you mentioned the McDonnell-Douglas test, the application of the McDonnell-Douglas test leads us to a determination in a retaliation case or question of causation pretext. That would be the same under but-for or under motivating factor. We need to look at those to see if there's sufficient evidence from which a reasonable jury could find for the plaintiff. I'm unduly complicating this though, Mr. Goldsmith. I mean, isn't the real issue here whether they're disputed facts which, if taken in the light most favorable to Ms. Foster, a jury could find but-for causation? Absolutely, Judge Keenan. Isn't that really what you need to be talking to us about? Yes, I think it's both, clearly from Judge Wynn's questions, but yes. No, I'm asking the same question. He's asking the same thing. There are ample disputes of fact, credibility disputes. We don't concede that there wasn't direct evidence of retaliation because Judge Billy's statements, I think, are direct evidence of retaliation because she said that she was motivated to fire Foster because of the complaints, the repeated complaints which were recent of retaliation, and it's important to note that Magistrate Judge focused only on the original complaint of sexual harassment when he should have also focused on the later complaints of retaliation. But yes, as to the facts and the credibility disputes, Well, aren't the university's response on non-retaliatory reasons, aren't they in disputes such as the supervisor acted, said she gave her permission to do certain things with forms, praised her, there was testimony in the record that she wasn't inflexible in scheduling, the university didn't give her a reason for termination initially. So aren't those material facts that need to be resolved by a jury? Yes, I think so, Judge Floyd. Not only are they contested, but the timing of when the because it was after the time of the later complaints by Officer Foster in September on the 21st and the 28th of 2007. So yes, the furniture, he approved of that, Chief Wright approved of that initially. The forms, same thing. And on the inflexibility, we have witnesses, the third party witnesses who worked there, the supervisor and the scheduling coordinator, both of whom testified, or rather averred, that she wasn't inflexible at all. Are you saying then that all of the facts are controverted other than the absenteeism? Well, I think that the, on the question of, well, certainly all, we could talk about the absenteeism, but yes, that virtually everything is controverted. And in many instances, the facts are controverted by the employer's own issue. Frequently the same witness. Chief Wright on both sides of several of these issues. But he's not the decision maker. I mean, Holden said that he and Billy were the decision makers, right? What's your basis for saying Wright's the decision maker? Yes. The record shows that Wright initiated the move to fire Officer Foster. And he went to Holden, who referred him over to Billy and said, talk to Billy. At which point Billy concurred, yes, we should fire her. And she was fired. Holden then approving. Because Wright raised the issue, that makes him the decision maker? Well, I think that Holden's testimony was that he relied on Wright to, so under Staub, I don't think there could be much doubt. But Holden testified that he relied on Wright what he heard from Wright and what he heard from Billy as to firing Officer Foster. In return to the hostile work environment claim, why isn't the Maryland Human Affairs report part of this record? There were no findings. All there was was a charge by employee C, which was that was a mistake that the court made, that counsel made. There was no record of that. So that's why you don't see any findings, because there was no record, Judge Fuller. Can we get to that issue based on what's in the record now? Absolutely. Because it's a de novo trial here. And the question is whether the UMES knew or should have known that Jones was likely to act again as he did toward employee C. We don't know that he did act that way to employee C. Right. And I realize that's a complicated question. And that's just so attenuated. You know, I understand your retaliation claim. I mean, I think you've got a good robust argument, irrespective of which way the court ultimately comes out on it. But I just don't understand the hostile work environment claim at all. I mean, she complained. They demoted the guy. They moved him out of her working area. What did they do wrong? I mean, we don't know that employee C, we don't know that he did anything with regard to employee C. What's the problem? Well, what they did wrong, I know my time is running out. What they did wrong was that they continued the hostile environment in a different form through Wright's hostility toward Foster, which led to Billy's hostility toward Foster. And as far as the employee C aspect goes, I want to say clearly that I understand that it's a difficult problem because we're talking about it's sort of like a case within a case kind of situation. We're talking about what happened in this earlier situation. But if the court doesn't allow the jury to look at this, then essentially it seems that the employer would have a free pass to do nothing when something had happened with employee C that it should have taken care of. So that's kind of the problem. I realize, Judge Kennedy, you're saying it's attenuated. And in a sense, as I said, it's sort of like a case within a case. But I don't see any other solution to it. It's not as if there was any finding by an outside decision maker on that. And the question is whether the under a negligence standard should have done something about that. I hope that answers your question. Okay. Thank you. Thank you. All right. I'd like to hear from Mr. Zacharias. If I pronounced that correctly? You did. Oh, good. And thank you. Good morning. May it please the court. Carl Zacharias on behalf of the Appellee University of Maryland Eastern Shore. In University of Texas Southwest Medical Center versus Nassar, the Supreme Court expressly endorsed and encouraged utilization of the heightened but-for causation standard to dismiss retaliation claims at summary judgment. And this court should seize upon that encouragement and that endorsement as the district court. Where does the at summary judgment part of that come from? That's actually quoted language from the Nassar decision. And again, I may not be getting the exact quote right, but it's something along the lines of dismissing dubious retaliation claims at summary judgment. Kind of elliptically written, isn't it? I mean, even if the, I think you're referring to the language that, I guess, the language that says even if the employer could escape judgment after trial, the lessened causation standard would make it far more difficult to dismiss dubious claims at the summary judgment. I agree with you. It is somewhat elliptical, but I think the Supreme Court's endorsement of granting summary judgment at that stage is very clear. They are talking about a hypothetical retaliation plaintiff who poses a lot of policy concerns with respect to abuse of anti-discrimination laws. And that is what the Supreme Court is trying to encourage, granting summary judgment in those instances. So what has happened with the Nassar case is we've moved from motivating factor to the but-for causation, which I think we all agree is somewhat a more heightened standard. Oh, correct, without a doubt. And it is your contention that evidence in that vein must be more compelling, or at least must show that animus to a degree sufficient to survive summary judgment to allow it to go to a jury. And then, of course, the jury itself would be instructed that they could find but-for causation. They may not. Summary judgment is just a preliminary part of the procedure. I think the standard is more than a jury instruction. And at summary judgment, it's always been the case that there's an evidentiary standard that has to be met and has to generate a genuine dispute of material fact in order for a trial to be held and for a question to go to the jury. And the but-for standard is also speaking to that evidentiary standard that a court in a summary judgment proceeding is analyzing. So the court is analyzing but-for whether or not the plaintiff has produced any evidence which would satisfy a but-for. And then beyond that, if the case does go to trial, of course, the jury instruction would be something consistent or in keeping with that heightened standard. But in Nassar, was the court talking about quantity of evidence, or was it talking about the motivating factors? I think they were talking about the quality of the evidence. And the quote was very specific. It's got to be that type of evidence that shows that without it, this person would have their job still. So the thing that comes to my mind when I think about these kinds of cases, and I do agree, it is a different standard. But at a summary judgment stage, it troubles me to some extent to think that in a criminal context, the burden of proof is reasonable doubt. And then if we apply in the direction you're going, we would probably dismiss more cases after the government's evidence, because that's a pretty high level of reasonable doubt that a jury. And here we are looking in a civil. I know this is a civil case in the context of a but-for causation is the ultimate proof that the jury needs. And you're saying that the evidence here must be of a quality that would probably lead to dismissal of most of these claims. Well, it has to be of a certain quality from which a reasonable jury can infer retaliation. And in this case, the evidence just does simply not meet that quality. You mean this evidence in a light? In a light most favorable to Ms. Foster. Without a doubt, a light most favorable to Ms. Foster. And the Supreme Court clarified that standard very clearly recently in the Tolan case, which is cited at length by Mr. Goldsmith. But the point, I guess, that I would urge the court to see is that these two concepts are not irreconcilable. At summary judgment, courts can use the traditional principles of summary judgment and apply this but-for standard. And do it without weighing the evidence and viewing it in a light that's not the most favorable to the plaintiff. They could simply say to the plaintiff, have you produced any evidence from which a reasonable jury could infer causation? And if the answer is no, summary judgment is appropriate. And in this case, the answer was clearly no. And it's for the reasons that some of the questions, I think, the court or some of the illustrated by some of the questions from the court. For example, it's very clear that Dr. Holden was the decision maker and not Chief Judge Wright, who most of the actions, most of Ms. Foster's allegations are directed at. And I think that the Supreme Court's decision, which was decided the very same day, I think, as Nassar, that's Vance versus Ball State, that holding made very clear who the person is that who you're looking at in terms of who had animus. And under Vance, the Supreme Court made clear that that person is the person who the employer empowers to make tangible employment decisions with respect to the employee. And the implications of Vance can't be ignored. Vance was cited in our brief. And the implications in this case is that Foster cannot survive summary judgment by merely showing that someone within her department, one or two individuals, held a retaliatory animus. She has to instead show that the actual decision maker held a retaliatory animus, or alternatively, that somehow the animus can be imputed to that person. And in this case, she has no evidence that Dr. Holden held any sort of animus. She has no evidence that such an animus can be imputed upon him. And in fact, the undisputed evidence in the record here suggests the exact opposite. And moreover, it suggests it so strongly that no reasonable trier of fact could infer animus. And I would say- What about Billie's comments? You know, the magistrate, Judge Sullivan, doesn't appear to account for those at all. Billie's comments about her not getting over things that she can't move on, all of those things. How does that not address them? And why aren't those- I can't obviously read into Judge Sullivan's mind, but I think it's fair that he perhaps gave them the treatment that they deserved. It was an effort on Ms. Foster's part to escape summary judgment by contorting those statements into what she argued was direct evidence. But preliminarily, by the way, it has to be noted that Ms. Billie's remarks about Foster trying to set up the university turned out to be completely true. And the record is undisputed as to that by Foster's own admission. But to answer your question, and perhaps more importantly, those statements are not what Foster characterizes them as they are. As we pointed out in our brief, they are rather the remarks of an experienced human resources manager who is identifying a potentially litigious employee. Well, that's in the light most favorable to the university. But is that in the light most favorable to Foster? Now, with respect, before getting to that, I would note that there's a legal definition of direct evidence that we have to look at here. I think there's a difference between viewing evidence in a light most favorable to Foster and then also distilling that evidence from the spin that she places on them. I think if the court reads the entirety of Ms. Foster's statements, she is simply expressing a belief and opinion as to Foster's state of mind. She is not speaking to her own state of mind. And I think that an easy reading of that statement will reveal that. She is not suggesting at all that she has an intent to avenge what Foster did. And furthermore, to read that, it would not be contrary to summary judgment principles about viewing the evidence in keeping in mind that it was Ms. Billy who came to her aid and protected her when she first filed that complaint. That's a jury argument, isn't it? No. We have to have evidence from which a reasonable jury can infer retaliation. And Ms. Foster's case theory is one which demands strong supporting evidence. And I think this court's holding in Wagner v. Wheeler, which sort of flushed out the distinction between prima facie evidence of causation and but for at summary judgment, is useful in showing that all Ms. Foster is doing is really spinning Ms. Billy's statements. I think that really what Judge Sullivan was perhaps doing was seeing those statements for what they were, which was merely just an expression of Ms. Billy's opinion that Foster was a disgruntled employee. Let's talk about the hostile work environment for a moment. Where is that human rights report? Does one exist? It never made it into the record. How can you consider that there was no probable cause but testimony of somebody who was not a part of that proceeding? Dr. Holden was a part of that proceeding, and it was his testimony where... But in terms of commenting on what the commission did, he can't speak for the commission. Correct. And I think that it's Ms. Foster's obligation to submit evidence which refutes that. And she failed to do that. It would have been as simple as subpoenaing the local EEO agency to get that report to contradict Dr. Holden's testimony. And obviously that was problematic for her case. She was relying so much on the case about Employee C. And by the way, I'll note that the Fourth Circuit hasn't really even adopted that theory about a duty to protect an employee from an alleged serial harasser. So I think the court would have to first get through that step and see where it stands there before moving on to Ms. Foster's argument about whether or not her evidence meets that test. Uh, what do you do about a Paroline case where there's a duty to protect employees from known harassers? Is that from the Fourth Circuit? Yes. Okay. My apologies, your honor. It was my understanding that it was only two other circuits that had adopted that theory where there was a duty to protect from an alleged serial harasser. I'm pretty sure I'm right about that because it was decided in 1989-1990, uh, en banc in 1990. Yeah, but now, assuming this court were to, and I'll take your word that that's the case, Ms. Foster's evidence just simply doesn't arise to that standard. Again, the only evidence that she produced was a single dated instance of an alleged harassment. And again, she asked Dr., stated the result and it was a, it was an answer that was not favorable to her. And that if she wanted to continue along with that case theory and go to trial on that issue, she needed to produce some evidence to generate a genuine dispute of material fact. Now, since Nassar, I want to note that four other circuits in published opinions have affirmed, already affirmed summary judgment in, uh, uh, in, in retaliation cases based on Nassar standard where the plaintiff had failed to produce sufficient evidence of causation. And moreover, just recently this past October, a panel of this circuit too, in an unpublished decision, uh, reached the same conclusion that's felt versus MIE technologies. Um, uh, so the, the, the, the, the wave of case law is clearly leading in this direction. Second, the district court below. Well, the case law is dependent on the facts of each case. Case law, the law is pretty subtle when you say but for causation. And what we, I think, it would seem to me that even in comparing cases, we've got to look at somehow, as you say, quality of evidence. Uh, and every case, it, it makes it somewhat difficult for us because if we do get in this business of almost weeding the evidence, I guess, to some extent, you're not supposed to, I mean, looking at like most favorable and determining does it, would a reasonable juror be able to make this determination? In every case, the facts are going to be different. And I don't know how we escape looking at this on a case by case basis. I think this case presents a good vehicle for fleshing out when summary judgment is appropriate in a retaliation case. Because we can push the facts. These facts could be then used and say, well, and those facts are, and then it gets into these facts are worse than that or not as strong as that. And I understand your point. And I can see how a court, how courts are going to struggle with that. I don't think this case raises that concern because the undisputed facts are, was that Dr. Holden was the decision maker. And it is, it needs to be proven that, or excuse me, it needs to be shown that no, that a reasonable trier of fact could infer that Dr. Holden acted with an animus or that such an animus couldn't be imputed upon him. And in this case, the facts are so clear and undisputed that Dr. Holden not only held no that he was looking at this termination with an eye towards retaliation. When he vetted this determination, he was doing it with the advice and counsel of Marie Billy, who had already heard most of, who number one, they'd already just five months earlier, just resolved the sexual harassment complaint in Ms. Foster's favor. Why isn't Billy also a decision maker in this case? Behold, quite frankly. Holden says he was the one with the authority. I have no better, I have no better answer than state bureaucracy. In a, in a, in a state university setting, there are only certain people that are vested with the authority to hire and fire and take certain employment actions. And in this case, it's Dr. Ronnie Holden, the Vice President of Administrative Affairs. Now, like any good decision maker, he's going to seek advice and counsel from those who, who, who are, are, are knowledgeable and, and, and who, who exercise good judgment. And in this case, the Human Resources Manager, Marie Billy. And so, only if you can say that Marie Billy or Chief Rights Animus, even assuming that they had such an animus, could be imputed upon Dr. Holden, could we take that step to say, all right, a reasonable jury could infer this. But in that, the facts of this case do not, do not warrant taking that giant leap. And in fact, again, as I mentioned, the, the Dr. Holden and Marie Billy, just five months earlier, had resolved a sexual harassment complaint in her favor. And in doing so, demoted a supervisory employee. And then following that, Ms. Billy had fielded and investigated all of Ms. Foster's complaints about retaliation and had found that there were non-retaliatory reasons for each one of those actions and had told her about them, what those reasons were. Yet she continued to, to persist and was unaccepting of those conclusions. So when they looked at this termination record, clearly they knew that there was a potential for retaliation. And to say that Dr. Holden could be imputed with a retaliatory animus is just something that a reasonable fact finder cannot infer. Okay, let me ask you a question, Mr. Zacharias. On page 30 of your brief, right in the middle, with the sentence that begins most tellingly, you say, she still, still lacks any evidence that Dr. Holden and Ms. Billy, the actual decision makers, held a retaliatory animus, which was the but-for cause. So it looks to me like in your brief, you're conceding that Ms. Billy is an actual decision maker by that language. My apologies, that is not intended to mean, to be a concession. Is that what it's saying? That is what it says. That is what it says. But I believe the record is clear here that it's Dr. Holden who makes the decision making. There is the joint appendix. It was Dr. Holden who signed off on the termination letter. It was not Marie Billy. But yes, I would concede that Marie Billy definitely plays an important role in advising and counseling Dr. Holden. The thing that perplexes me a little bit about your argument about Dr. Holden, it is Billy who said that she fired her for complaining. Is that not in the record? Am I reading it wrong? That Marie Billy said she fired her for the complaint? Billy is the one who said she fired Foster because Foster kept complaining about retaliation. Isn't that in the record? No, that is not in the record, to my understanding. What do you do with Judge Keenan's question then? I said she's advising Dr. Holden. And yet, to a certain extent, they work together in reaching a decision. But it is ultimately Dr. Holden's decision. I think the record is very clear about that. And that's in their affidavits. Having an early opportunity to apply the Nassar standard, the district court was actually faced with the sort of plaintiff that troubled the Nassar court. The record here is uncontested that immediately following Foster's harassment complaint, she began to take liberties with her leave, as Judge Keenan had already pointed out in his     And that's in the affidavit. Her questions to opposing counsel. And she became inflexible in her work schedule. This was all at a time when she was a new probationary employee, and at a time when the police department that she served was severely short-staffed. Dr. Holden's case, I'm just trying to think that through. But for God's sake, the immediate supervisor was right. Is that right? Correct. And I take it you are of the opinion that the jury could not consider actions of right being imputed to Holder and others? Without evidence. No, our position is that without evidence, that where a reasonable jury could impute that animus onto Holden. In this instance, because I assume we're in the McDonnell Douglas framework, would be circumstantial evidence. And we would have to look at whether there's circumstantial evidence that a reasonable jury could say this knowledge was imputed to them. So that takes it away from just saying Dr. Holden didn't know, or Ms. Billings didn't know. It gives a, because we're dealing with a jury, in terms of what a jury could determine from this. And so I'm asking, but ultimately, if there was circumstantial evidence that could be imputed to Holden, from your perspective. If there was some sort of circumstantial evidence, I see my time is up. May I just briefly answer the question? Thank you. If there was some sort of circumstantial evidence, quite frankly, the arguments would be much different today. But as we went to great lengths to demonstrate that there was no evidence upon which Dr. Holden could be found to have animus, and that's why summary judgment was circumstantial under McDonnell Douglas, certainly opposing counsel would have pointed that out. But if he didn't know directly, the question is, could there be evidence that would show that any animus that might have been on the part of the immediate supervisor, Wright could be imputed to? There is no evidence in this record suggesting that. All the evidence suggests the contrary. And our position is that all the evidence in the record suggests that Dr. Holden was looking at this, vetting it with an eye for retaliation. And that eliminates any possibility of animus for a jury to infer. Thank you. Thank you, sir. Mr. Goldsmith? Thank you. To pick up on that last point, there are two key pieces of evidence that would bring Dr. Holden's involvement of this into question, even though clearly the retaliatory animus could be imputed under STAB. The Supreme Court is clear about that. Number one is the findings question. Contrary to what counsel said, Ms. Bilde testified at her deposition that she wasn't aware of any findings, and that if there had been findings, they would be within the records of the university. So there were no findings as to the employee see issue. And Dr. Holden, when he claimed that there were, was incorrect about that. How is his testimony or affidavit, how is that admissible? His testimony about the findings? Yeah, about the findings. Well, I think- We're talking about human affairs. Yes, yes. How can he say what they say? Well, I think it's an admission of a party opponent when he makes a comment about what kind of record there was that he was aware of, and it turns out that it's not true. And Billy admitted that it wasn't true. She's the HR chief. She's the one who would have had that documentation. Also, a really critical piece of evidence is the fact that both Billy and Holden testified that when Billy investigated the Foster allegations of sexual harassment, that she found there was no sexual harassment. And then it turned out that she had a report that came out, and the report says this was sexual harassment. So why did Holden say that Billy did not find sexual harassment? So legally, I don't think it's really critical what Holden's personal views were because he relied so much on Wright and Billy, but we have evidence as to his animus in the situation too, and I would note that he was close with Chief Wright. I'd like to point out in response to something that you said, asked about Judge Wynn, that direct supervisor of Officer Foster was actually Officer Sykes, who thought that she was an outstanding employee, had done a very good job, and was not inflexible or any of that. Wright was actually her second-line supervisor. With regard to the issue about whether Ms. Billy was one of the decision makers, I would just point out in reference to the fact that it was admitted in the brief, as Judge Keenan pointed out, that when the employer can't get its own story straight, that's the epitome of a case that needs to go to the jury, and that's clearly what happened here. Moving along to the leave record issue, I would just like to point out that the record shows that Chief Wright said it was not the medical leave, it was not the accident that recommended the firing of Officer Foster. And if you look at this, page 1015, to exclude that, then you really don't have a severe absenteeism thing that's at all clear here at all. She used leave that was available to her. The scheduling supervisor said she was cooperative and did what was needed, and I believe that the jury could infer pretext from reliance on that as well. Not that every single thing that they ever say has to be refuted to get the case to the jury, but I think that that can push back against that is most available. Mr. Zacharias pointed out, said that some other circuits had found, I guess, that they were going to rely on a different evidentiary standard to allow the plaintiff to get to the jury on pretext. But I would just point out again, as I did in my opening argument, that this issue has been addressed by a panel of this court through the gross age discrimination context, which is the exact same standard, the exact same issue. And that was after, and in that situation, citing too gross, the court found that showing the traditional evidence that's been necessary, which is evidence of causation and pretext, would be sufficient. Mr. Zacharias said also that Ms. Billy was supporting Officer Foster in her charges, but I don't understand exactly how he could make that contention. Well, I don't really think you need to address that. Very well, very well. Mr. Zacharias said that the court could infer here to grant the summary judgment that there was no evidence as to causation, and there needs to be some evidence as to causation. I think that that was demonstrably wrong, and that therefore, the case should be reversed and sent back. It should be sent back on both issues. If there's any further questions, particularly on the harassment, I'd like to entertain them. Otherwise, I could sit down. Thank you very much. Okay, thank you, sir.
judges: Barbara Milano Keenan, James A. Wynn, Jr., Henry F. Floyd